## Lawson Estate

*Paul P. Wisler* and *H. Donald Busch*, for accountants.

*James L. Hollinger*, for claimants.

TAXIS, P. J., November 15, 1962. — The first and final account of Ingrid Eleanor Lawson and Frankford Trust Company, executors, was examined and audited by the court on October 19, 1962. . . .

One narrow but important problem has been presented requiring a ruling by the court relating to a support agreement entered into by decedent and his first wife, June Wolverton Lawson, on May 14, 1949. This support agreement provided, inter alia, for the payment of $30 per week for the support, maintenance and education of their children, Richard Thorpe Lawson, Jr., born March 11, 1947, and Cheryl Lynn Lawson, born April 13, 1948. Paragraph 3 of the agreement is the appropriate paragraph and reads in full as follows:

"3. Husband agrees to pay the sum of Fifty ($50.00) Dollars per week, for the support and maintenance of the wife, and for the support, maintenance and education of the children. If the wife remarries, this amount shall be reduced to Thirty ($30.00) Dollars per week. This payment shall continue until the children reach the age of eighteen years. The said weekly payment as aforesaid to commence on the 16th day of May, 1949, and payable each week thereafter."

During the lifetime of decedent, his first wife remarried and decedent made all payments due under this agreement.

Following decedent's death on January 2, 1961, Ingrid Eleanor Lawson, decedent's widow, a co-executor of the estate, made payments on behalf of the estate for the support of Richard Thorpe Lawson, Jr., and Cheryl Lynn Lawson in the total amount of $1,080, or $30 per week for a 36-week period.

Since decedent's death, these two children have been receiving together the sum of $127.05 per month under the social security laws, which is just a little less than $30 per week as provided for by the agreement.

The initial inquiry is whether the support agreement in favor of decedent's two children of his first marriage terminated at his death or continued thereafter. The contract itself does not expressly provide that the lia-

bility to support the children will continue after the death of decedent. The contract, by clear implication, however, continues after death by reason of the provision for support for the children until they are 18 years of age. In such case, the father's contract for support is not only valid but will be considered binding upon his estate: Huffman v. Huffman, 311 Pa. 123; Stumpf's Appeal, 116 Pa. 33.

The second inquiry then becomes how long does this support agreement bind the estate of this decedent. The express provision in the agreement provides that the payment of $30 per week shall continue "until the children reach the age of eighteen years." Therefore, the court concludes that the support payment of $15 per week per child shall continue until each child reaches the age of 18 years.

A third matter has been presented which must be disposed of: namely, the impact the social security payments have upon this agreement. It has been stated to the court that these two children have been receiving the sum of $127.05 per month under the social security laws since decedent's death.

Research has disclosed but one case dealing with this subject: Cash v. Cash, 353 S.W. 2d 348 (Ark.) The Cash case is clearly distinguishable and is of little aid to the court. In the Cash case, the court observed that the father would have been unable to meet his support payments on his retirement income and would have been compelled to begin work again, thereby depriving the child of any net increase since the child's social security payments would stop with the father's when he returned to work.

In the instant case, there is nothing in the written contract, either expressly or by implication, which would justify this court in writing into this support contract a provision setting off social security payments against the weekly support provided by the agreement.

The total liability of the estate* for support per the contract may be calculated as follows:

(a) Richard Lawson (becomes 18 on March 11, 1965) (4 years and 9 weeks at $15 per week) ........................ $3,255.00

(b) Cheryl Lynn Lawson (becomes 18 on April 13, 1966) (5 years and 13 weeks at $15 per week) ........................ $4,095.00

$7,350.00

Less support paid to date ............ $1,080.00

Net ............................... $6,270.00

It is argued by the estate that since these social security payments were earned in part by decedent himself, by his contribution, they represent payments somewhat in the nature of insurance; that if decedent had funded his support liability by commercial insurance, it is likely that the estate could be relieved of support liability thereby. The short answer to this argument, however, is that the contract controls and as such contains not the slightest suggestion of set-off of social security payments. The court, therefore, concludes that the estate's liability for support continues as set out above without diminution by reason of social security payments. The claim of the estate for reimbursement of the $1,080 is dismissed. . . .

And now, November 15, 1962, this adjudication is confirmed nisi.

---

\* It is to be observed that the father's net estate available for distribution is over $140,000.